**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LS-NJ PORT IMPERIAL LLC,

      Plaintiff,

v.

A.O. SMITH WATER PRODUCTS
COMPANY (a Division of A.O. Smith
Corporation), JOHN DOE(S) 1-50 and ABC
COMPANIES,

      Defendants.

No. 22cv1687 (EP) (JSA)

**OPINION**

**PADIN, District Judge.**

      Presently before the Court is Defendant A.O. Smith Water Products Company's ("A.O. Smith's") motion to dismiss Counts I (Breach of Contract), II (Breach of the Covenant of Good Faith and Fair Dealing), VI (Violation of the New Jersey Consumer Fraud Act), VII (Negligent Misrepresentation), VIII (Intentional Misrepresentation), and IX (Unjust Enrichment) of Plaintiff LS-NJ Port Imperial LLC's ("Port Imperial's") First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  D.E. 12.  The Court has reviewed the parties' submissions and decides the motion without oral argument.  *See* Fed. R. Civ. P. 78(b); D.N.J. Civ. R. 78.1(b).  For the reasons stated below, A.O. Smith's motion is **GRANTED in part** (as to Counts I, II, VI, VII, and VIII) and **DENIED in part** (as to Count IX).

I.     **BACKGROUND**[1]

   **A. Factual Background**

   A.O. Smith is the largest manufacturer and marketer of water heaters in North America. D.E. 8 ¶ 1. Port Imperial is part-owner of a residential development located in Weehawken, New Jersey (the "Premises"). This action arises out of Port Imperial's purchase of four allegedly defective A.O. Smith-manufactured BTP-200-1250 water heaters (the "Water Heaters") "sold by A.O. Smith, through their representative Wales-Darby, Inc. ("Wales-Darby"), to F&G Mechanical Corporation ("F&G Mechanical") – a subcontractor acting on [Port Imperial's] behalf." *Id.* ¶ 2. The Water Heaters were purchased during the initial construction and development of the Premises (the "Project").

   Belle Associates, LLC ("Belle") served as Port Imperial's construction manager on the Project. Belle, in turn, entered into a subcontract with F&G Mechanical to perform plumbing and related work, including the installation of [the] four Water Heaters for the [Premises]." *Id.* ¶ 11. "WSP USA Inc. ("WSP") – the engineering firm hired for the Project, worked alongside F&G Mechanical in connection with specifying the water heating equipment and coordinating its installation at the [Premises]." *Id.* ¶ 12. "WSP and F&G Mechanical were acting on behalf of [Port Imperial]" during the entire relevant period. *Id.*

   "[O]n or about August 8, 2016, F&G Mechanical submitted a Purchase Order,[2] for the purchase of [the four Water Heaters], which A.O. Smith, through its authorized representative Wales Darby, knowingly sold to F&G Mechanical so that the Water Heaters could be used for the

---

[1] For the purposes of this Opinion, the Court accepts as true all of the complaint's well-pled factual allegations.

[2] Port Imperial has appended a copy of this Purchase Order to its amended complaint. *See* D.E. 8 at Ex. A.

purpose of supplying potable water to the various residential dwellings at the Premises." *Id.* ¶ 20. "The cost of all four Water Heaters totaled $113,900.00. The final Order was submitted on December 30, 2017." *Id.* ¶ 21.

The Water Heaters were installed at the Premises sometime after December 30, 2017. "In or about January 2020, [Port Imperial] discovered that one of the [Water Heaters] was leaking." *Id.* ¶ 28. "This first [W]ater [H]eater completely corroded as a result of the leak and was deemed a total loss." *Id.* "[O]n or about September 28, 2020, [Port Imperial] discovered that a second [Water Heater] was failing due to a tank leak and was taken offline shortly thereafter." *Id.* ¶ 30. And shortly after November 15, 2020, "the remaining two [Water Heaters] failed." *Id.* ¶ 34.

Port Imperial avers that it was induced to purchase the four Water Heaters based on certain material misrepresentations made by A.O. Smith about the quality and durability of its products. *Id.* ¶ 13. For example, "[u]pon information and belief, A.O. Smith and/or one or more of its representatives, including Brandon Moma (A.O. Smith's Special Projects Coordinator, Field Service Engineering), spoke with [Port Imperial's] engineers at WSP regarding the specifications of the Water Heaters, and misrepresented during those calls that the Water Heaters would be durable and suitable for the [Premises]." *Id.* ¶ 16. A.O. Smith's product brochures also purportedly make express misrepresentations about the quality and durability of their products because they state, in relevant part, that: "Every water heater that carries the A.O. Smith name has a reputation to live up to . . . . So, when you choose an A.O. Smith water heater, . . . you can be confident that you are getting the best water heating solution regardless of the application – for today and for years to come." *Id.* ¶ 17. A.O. Smith's specification materials for its commercial water heaters likewise "fraudulently advertise[]" that its "heavy-duty industrial-grade water

3

heaters are designed and built to handle the most demanding hot water heating requirements of large commercial and industrial users." *Id.* ¶ 18.

Port Imperial also claims that A.O. Smith deliberately withheld material information about the Water Heaters. More specifically, it alleges that, "[u]pon information and belief, A.O. Smith knew, or should have known, that the tanks for [its BTP-200-1250 water heaters] were experiencing premature failures and leaks that could potentially result in a total loss of the heating systems, and deliberately and/or negligently failed to disclose these conditions prior to selling the Water Heaters to F&G Mechanical for use at [Port Imperial's] Premises." *Id.* ¶ 41. Further, and again "[u]pon information and belief, A.O. Smith received many complaints from other customers, complaining that the same model water heaters sold to F&G Mechanical were defective and experiencing premature failures." *Id.* ¶ 42. And finally, "[u]pon information and belief, A.O. Smith's BTP-200-1250 Water Heaters were discontinued due to repeated complaints related to the product's premature failures involving, among other things, tank leaks resulting from their defective design and workmanship." *Id.* ¶ 53.

## B. Procedural History

Port Imperial initiated this action in New Jersey Superior Court on February 25, 2022. D.E. 1. On March 25, 2022, A.O. Smith removed this action on the basis of federal question jurisdiction, given that Port Imperial's complaint asserts a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq. Id.* Port Imperial has not challenged removal, and the Court is satisfied that it has jurisdiction to adjudicate the present matter.

On April 22, 2022, Port Imperial amended its original pleading. D.E. 8. Port Imperial's first amended complaint asserts the following claims against A.O. Smith: Count I – Breach of Contract; Count II – Breach of the Covenant of Good Faith and Fair Dealing; Count III – Breach

4

of Express Warranty; Count IV – Breach of Implied Warranty of Fitness for a Particular Purpose; Count V – Violation of the Magnuson-Moss Warranty Act; Count VI – Violation of the New Jersey Consumer Fraud Act; Count VII – Negligent Misrepresentation; Count VIII – Intentional Misrepresentation; and Count IX – Unjust Enrichment. *Id.*

On May 6, 2022, A.O. Smith filed its motion to dismiss Counts I, II, VI, VII, VIII, and IX pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 12. On June 7, 2022, Port Imperial filed its opposition. D.E.s 15, 16. A.O. Smith filed its reply on June 14, 2022. D.E. 18.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. However, the allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. As the moving party, the defendant bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of the motion, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

In addition, Rule 9(b) imposes a heightened pleading standard on fraud-based claims, requiring a party to "state the circumstances constituting fraud with particularity." *Klein v. Gen. Nutrition Companies, Inc.*, 186 F.3d 338, 344 (3d Cir. 1999). "[T]he requirements of [R]ule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with precise allegations of date, time, or place *or* by using some means of injecting precision and some measure of substantiation into their allegations of fraud." *Board of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002) (internal quotations omitted) (emphasis in original).

## III.   ANALYSIS

### A.  Breach of Contract (Count I)

Count I of Port Imperial's amended complaint specifically alleges the following in support of its breach of contract claim. "A valid and binding contract existed between [Port Imperial] and A.O. Smith because F&G Mechanical, acting on [Port Imperial's] behalf, sent A.O. Smith a Purchase Order offering to purchase [four] A.O. Smith [W]ater [H]eaters . . . and said Purchase Order was accepted by A.O. Smith." D.E. 8 ¶ 58. Further, that "[Port Imperial] performed its obligations under such contract, including but not limited to paying A.O. Smith $113,900.00 for the subject Water Heaters." *Id.* ¶ 59. And finally, that "A.O. Smith breached its contract with [Port Imperial] by, among other things, [] failing to provide suitable and functional water heaters for use at the Premises; . . . [and] by otherwise failing to conform the goods to be suitable for [Port Imperial's] intended purpose under the Parties' contract." *Id.* ¶ 65.

A.O. Smith moves to dismiss this claim on two grounds: First, it argues that no formal contract exists between A.O. Smith and Port Imperial. D.E. 12-1 at 25. Second, it claims that Port Imperial fails to adequately allege the breach of any contractual duty. *Id.* at 27. For Port Imperial's

breach of contract claim to survive Rule 12(b)(6) dismissal, it must allege facts which sufficiently demonstrate: "(1) a contract between the parties; (2) a breach of that contract; (3) damages . . . and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

The Court finds A.O. Smith's first argument, *i.e.*, that no formal contract exists between A.O. Smith and Port Imperial, to be an inadequate reason to dismiss Port Imperial's breach of contract claim. The Court recognizes that there is nothing in Port Imperial's pleading which suggests that there was ever a written contract signed by both Port Imperial and A.O. Smith for the purchase of the Water Heaters. Indeed, Port Imperial specifically avers that its purchase of the Water Heaters was formally effectuated between A.O Smith's "authorized representative Wales Darby" and its own subcontractor, F&G Mechanical. D.E. 8 ¶ 20.

The absence of a direct written contract between A.O. Smith and Port Imperial, however, is not fatal to this claim, so long as the parties that entered into the contractual agreement were acting as the parties' agents. *See Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, Civ. No. 10-05321, 2012 WL 924380 (D.N.J. Mar. 19, 2012) (discussing principles of agency and noting that "[t]he court must look to factual relationship between the parties and should not rely exclusively on any statement attempting to define the relationship."); *accord* N.J. Stat. Ann. § 12A:2-201 ("[A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought *or by his authorized agent or broker*.") (emphasis added). Moreover, Port Imperial's amended complaint expressly states that it paid "A.O. Smith $113,900.00 for the subject Water Heaters." *See* D.E. 8 ¶ 59.

7

In light of these considerations, the Court finds that the facts alleged in Port Imperial's complaint plausibly suggest that a contractual relationship existed between Port Imperial and A.O. Smith.  This remains true notwithstanding that the Purchase Order which initiated that sale was effectuated by the parties' respective agents.

The Court does, however, agree with A.O. Smith that Port Imperial's pleading fails to allege facts which adequately demonstrate that A.O. Smith breached any specific contractual duty which it owed to Port Imperial.  Here, Port Imperial specifically alleges only that it entered a contract to purchase four BTP-200-1250 water heaters from A.O. Smith.  There is nothing in Port Imperial's pleading which suggests that it did not receive those water heaters, or that the terms of the parties' *contractual* agreement were not otherwise honored by A.O. Smith.  Indeed, while Port Imperial alleges that these four Water Heaters were ultimately defective, it fails to reference any specific term within the parties' contract which A.O. Smith breached as a result.  Count I will accordingly be dismissed, without prejudice, for this reason.  *See Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 462 (D.N.J. 2020) ("The Amended Complaint fails to allege or identify a contractual provision on which this claim is based" and was thus "insufficiently alleged to support Red Hawk's breach of contract claim."); *see also Frederico*, 507 F.3d at 204 ("Because it cannot be determined that Home Depot breached the agreement, it cannot be inferred that Frederico's damages 'flowed' from the breach.").

### B.  Breach of the Covenant of Good Faith and Fair Dealing (Count II)

In Count II of its amended complaint, Port Imperial alleges a claim for breach of the covenant of good faith and fair dealing.  Every contract is deemed to contain that implied covenant. *Wade v. Kessler Inst.*, 172 N.J. 327, 798 A.2d 1251, 1259 (2002).  A claim of breach "arises when the other party has acted consistent with the contract's literal terms, but has done so in such a

manner so as to 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" *Id.* at 1262 (quoting *Bak-A-Lam Corp. of Am. v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 129 (1976)).

"To sufficiently plead a breach of the duty of good faith and fair dealing, a plaintiff must allege that '(1) the defendant act[ed] in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract.'" *Red Hawk Fire*, 449 F. Supp. 3d at 463 (quoting *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009). Among other things, a defendant may breach the implied covenant of good faith and fair dealing if the plaintiff's "reasonable expectations are destroyed when [the] defendant acts with ill motives and without any purpose," or the plaintiff "relies to its detriment on [the] defendant's intentional misleading assertions." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210, 226 (2005).

Port Imperial's breach of the covenant of good faith and fair dealing claim fails under this pleading standard. As will be discussed in greater detail *infra*, Port Imperial's complaint is bereft of factual allegations which plausibly suggest that A.O. Smith acted in bad faith or with a malicious motive when it sold the Water Heaters to Port Imperial. The pleading likewise fails to adequately plead that A.O. Smith made any intentionally misleading assertions upon which Port Imperial relied. Count II of Port Imperial's amended complaint will be dismissed without prejudice.

### C. Unjust Enrichment (Count IX)

To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Snyder v. Farnam Companies,*

*Inc.*, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011).  At the pleading stage, a plaintiff "need only allege facts sufficient to show: 1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust."  *Palmeri v. LG Electronics USA, Inc.*, Civ. No. 07–CV–5706, 2008 WL 2945985, *5 (D.N.J. July 30, 2008) (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437 (1992)).

Count IX of the amended complaint alleges that A.O. Smith has been unjustly enriched by retaining monies which Port Imperial paid to A.O. Smith for the allegedly defective Water Heaters. And further, that A.O. Smith's retention of that money is unjust because Port Imperial did not receive what it paid for.  Port Imperial has therefore adequately pled a claim for unjust enrichment. *See Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 422 (D.N.J. 2016) (unjust enrichment claim adequately pled where complaint "allege[d] that GE ha[d] been unjustly enriched by retaining the $1,087 Volin paid for the allegedly defective Gas Range and that GE's retention of that money [would be] unjust because Volin did not receive what she paid for.").  A.O. Smith's motion to dismiss Count IX is accordingly denied.

### D.  New Jersey Consumer Fraud Act (Count VI)

In Count VI, Port Imperial alleges that A.O. Smith violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.*  Claims under the NJCFA require a plaintiff to allege the following three elements: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss."  *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div.), *cert. denied*, 178 N.J. 249 (2003).  Rule 9(b) imposes a heightened pleading requirement concerning allegations of fraud, including NJCFA

claims, over and above that required by Rule 8(a). *Hughes v. Panasonic Consumer Elecs. Co.*, No. CIV.A. 10-846 SDW, 2011 WL 2976839, at *10 (D.N.J. July 21, 2011).

"Unlawful" conduct prohibited by the NJCFA includes:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been mislead, deceived or damaged thereby.

N.J. Stat. Ann. § 56:8-2.

The NJCFA recognizes three general categories of unlawful conduct: (1) affirmative acts, *i.e.*, misrepresentations; (2) omissions; and (3) regulatory violations. *See Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *2 (D.N.J. Apr.26, 2007); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17, 647 A.2d 454 (1994). The common denominator underlying all types of unlawful conduct is "'[its] capacity to mislead.'" *Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009) (quoting *Cox*, 138 N.J. at 17). Significantly, the unlawful conduct must be made "'in connection' with the sale or advertisement of a product or service." *Arcand*, 673 F. Supp .2d at 296-97 (quoting *Castro v. NYT Television*, 370 N.J. Super. 282, 294 (App. Div. 2004)).

"When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Cox*, 138 N.J. at 17; *accord Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 556 (2009) (intent is not an element of proof for affirmative acts because the law imposes strict liability for NJCFA violations). On the other hand, "when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Cox*, 138 N.J. at 18. "Implicit in the showing of an omission is

11

the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Arcand*, 673 F. Supp. 2d at 297.   A plaintiff need not establish reliance for NJCFA liability; rather, the Act establishes prohibited conduct as actionable even if no plaintiff "has in fact been misled, deceived, or damaged thereby." *Union Ink Co. v. AT & T Wireless*, 352 N.J. Super. 617 (App. Div. 2002).

In this case, Port Imperial specifically alleges that A.O. Smith committed the following affirmative acts in support of its NJCFA claim:  (1) "A.O. Smith and/or one or more of its representatives, including Brandon Moma (A.O. Smith's Special Projects Coordinator, Field Service Engineering), spoke with [Port Imperial's] engineers at WSP regarding the specifications of the Water Heaters, and misrepresented during those calls that the Water Heaters would be durable and suitable for the [Premises,]" D.E. 8 ¶ 16; (2) that A.O. Smith's product brochures make express misrepresentations about the quality and durability of their products, stating in relevant part: "Every water heater that carries the A.O. Smith name has a reputation to live up to . . . . So, when you choose an A.O. Smith water heater, . . . you can be confident that you are getting the best water heating solution regardless of the application – for today and for years to come," *id.* ¶ 17; and (3) "A.O. Smith fraudulently advertises in its specification materials that '[its] heavy-duty industrial-grade water heaters are designed and built to handle the most demanding hot water heating requirements of large commercial and industrial users.'" *Id.* ¶ 18.

Initially, the Court observes that "[t]he NJCFA distinguishes between actionable misrepresentations of fact and 'puffery.'" *In re Toshiba Am. HD DVD Marketing and Sales Practices Lit.*, Civ. No. 08-939 (DRD), 2009 WL 2940081, at * 9 (D.N.J. Sept. 11, 2009) (citing *Rodio v. Smith*, 123 N.J. 345, 352 (1991)).  "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945

(3d Cir. 1993). "[S]tatements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are not assurances of fact and thus do not constitute misrepresentations." *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 159 (D.N.J. 2013) (citation omitted); *accord Kuzian v. Electrolux Home Products, Inc.*, 937 F. Supp. 2d. 599, 615 (D.N.J. 2013) ("advertising 'puffery' does not usually amount to an actionable misrepresentation"). "Puffery is distinguishable from misdescriptions or false representations of specific characteristics of a product" and "[a]s such, it is not actionable." *Castrol*, 987 F.2d at 945. Under New Jersey law, statements of puffery are "simply . . . not statements of fact." *New Jersey Citizen Action*, 367 N.J. Super. at 14.

Here, the Court finds that the marketing statements Port Imperial identified within A.O. Smith's product brochures and specification materials, *i.e.*, that Port Imperial would be "getting the best water heating solution . . . for today and for years to come" and that A.O. Smith's "heavy-duty industrial-grade water heaters are designed and built to handle the most demanding hot water heating requirements of large commercial and industrial users," are mere puffery which is not actionable under the NJCFA. *See Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578 (D.N.J. 2016) (finding HVAC equipment manufacturer's marketing statements claiming its products were "top-quality" and "dependable" could not support misrepresentation claim); *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 451-52, 458 (D.N.J. 2015) (marketing statements that decking product was, *inter alia*, "designed to provide years of low-maintenance use and enjoyment," "dependable and attractive for years," and "[provided] years of outdoor living pleasure" constituted puffery); *In re Toshiba Am.*, 2009 WL 2940081, at *10 (D.N.J. Sept. 11, 2009) (finding marketing statement that product was for "Today, Tomorrow and Beyond" to be non-actionable puffery);.

As to Port Imperial's claim that A.O. Smith (and its representatives) "spoke with [Port Imperial's] engineers at WSP regarding the specifications of the Water Heaters, and misrepresented during those calls that the Water Heaters would be durable and suitable for the [Premises,]" the Court finds that there is insufficient detail pled about the what, where, and when of those conversations to satisfy Rule 9(b)'s heightened pleading standard. *See*, *e.g.*, *Torres–Hernandez v. CVT Prepaid Solutions*, Civil Action No. 3:08-cv-1057-FLW, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008) (finding that the defendant's alleged fraudulent misrepresentations fail to supply "the what, where and when," and thus, they are insufficient to sustain the NJCFA claim); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008) (dismissing misrepresentation based NJCFA claim because "[w]ith regard to the statements on Volkswagen's website and in the 2002 Passat owner's manual, the [p]laintiffs do not allege when the statements were made or at what point-if ever-each [p]laintiff was exposed to one or more of the statements").

As to A.O. Smith's purportedly actionable omissions, Port Imperial alleges the following, all upon information and belief: (1) "A.O. Smith's BTP-200-1250 Water Heaters were discontinued due to repeated complaints related to the product's premature failures involving, among other things, tank leaks resulting from their defective design and workmanship," D.E. 8 ¶ 53; (2) "A.O. Smith knew, or should have known that, the tanks for the model water heaters purchased by [Port Imperial] were experiencing premature failures and leaks that could potentially result in a total loss of the heating systems, and deliberately and/or negligently failed to disclose these conditions prior to selling the Water Heaters," *id.* ¶ 41; and (3) "A.O. Smith received many complaints from other customers, complaining that the same model water heaters . . . were defective and experiencing premature failures." *Id.* 12 ¶ 42.

The Court finds that there likewise is insufficient detail pled about the what, where, and when of A.O. Smith's purported omissions to satisfy Rule 9(b)'s heightened pleading standard. *See*, *e.g.*, *Glauberzon v. Pella Corp.*, 2011 WL 1337509, at \*9 (D.N.J. Apr.7, 2011) (finding that NJCFA-rooted allegations of omissions did not meet Rule 9(b) pleading standard where "Plaintiffs [did] not identify who at Pella was aware of the . . . defect, when or how they learned of such defect and/or when or how the decision was made to conceal the defect from its customers"); *see also Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, Civil Action No. 3:08-cv-1057 (FLW), 2008 WL 5381227, at \*6 (D.N.J. Dec. 17, 2008) (finding that plaintiffs alleged only general allegations of concealment in terms of defendant's marketing materials, and thus, the failure to inject any "details as to the character of the marketing and advertising materials" is fatal to the NJCFA claim). For the foregoing reasons, the Court will dismiss Count VI of Port Imperial's amended complaint; said dismissal is without prejudice.

### E.  Intentional Misrepresentation, *i.e.*, Common Law Fraud (Count VIII)

In Count VIII, Port Imperial alleges a claim for intentional misrepresentation, *i.e.*, common law fraud, based on the same intentional misrepresentations and omissions detailed above. *See* D.E. 8 ¶ 138. "[I]n its most general and fundamental conception," fraud "consists of the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith." *Jewish Ctr. of Sussex Cty. v. Whale*, 86 N.J. 619, 432 A.2d 521, 524 (1981). To prove fraudulent concealment or misrepresentation under New Jersey law, a plaintiff must establish five elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350, 367 (1997). The elements of Port Imperial's intentional

misrepresentation claim must be pled under the heightened standards of Rule 9(b).  *Arcand*, 673 F. Supp. 2d at 305.  Furthermore, advertising "puffery" does not usually amount to an actionable misrepresentation.  *See Rodio v. Smith*, 123 N.J. 345, 587 A.2d 621 (1991) ("puffery" is not deemed to be a misrepresentation of fact actionable for fraud).

The Court finds that Count VIII must be dismissed under the foregoing standards.  First, as discussed above, the marketing statements Port Imperial identified within A.O. Smith's product brochures and specification materials are mere puffery that is not actionable.  Second, with respect to Port Imperial's claim that A.O. Smith (and its representatives) "spoke with [Port Imperial's] engineers at WSP regarding the specifications of the Water Heaters" and made material misrepresentations during those discussions, the Court reiterates that there is insufficient detail pled about the what, where, and when of those conversations to satisfy Rule 9(b)'s heightened pleading standard.

Furthermore, a claim for fraudulent concealment based on either an affirmative misrepresentation or an omission requires showing that defendant had actual knowledge of the falsity of a fact, or knowledge of the omitted fact.  Here, Port Imperial has not pleaded with sufficient particularity that A.O Smith knew about the alleged defect in its Water Heaters when Port Imperial purchased them.  The amended complaint makes only vague allusions to A.O. Smith's receipt of numerous complaints about the specific Water Heater model it sold to Port Imperial and asserts that this model was eventually taken off the market in support of its ultimate claim that A.O. Smith knew the Water Heaters were defective at the time of sale.  Port Imperial therefore fails to inject the requisite specificity needed for its fraud claim to survive Rule 12(b)(6) dismissal.  Indeed, Port Imperial's pleading fails to contain any specific information about the

dates on which A.O. Smith affirmatively learned of the inherently defective nature of its BTP-200-1250 water heaters and/or discontinued its sale of that model.

In other words, Port Imperial's pleading contains no facts that adequately demonstrate that A.O. Smith was aware of the model-wide issue prior to selling the Water Heaters to Port Imperial in or around August 8, 2016, and thus, it fails to plausibly allege that A.O. Smith knowingly misrepresented or suppressed a material fact about the quality and longevity of its product to Port Imperial at the time of sale. *See Argabright*, 201 F. Supp. 3d at 602 (dismissing plaintiff's fraudulent concealment claim for substantially the same reasons). For these reasons, the Court will dismiss Port Imperial's intentional misrepresentation claim (Count VIII), without prejudice.

### F. Negligent Misrepresentation (Count VII)

Under New Jersey law, "[a] cause of action for negligent misrepresentation may exist when a party negligently provides false information." *Karu v. Feldman*, 119 N.J. 135, 146 (1990). To prevail on a negligent misrepresentation claim, a plaintiff must prove that the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied. *Green v. Morgan Properties*, 215 N.J. 431, 457 (2013); *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983). A plaintiff must further allege that the defendant owed him a duty of care. *See Smith v. Citimortgage, Inc.*, No. CV 15-7629 (JLL), 2015 WL 12734793, at *7 (D.N.J. Dec. 22, 2015) (citing *Kronfeld v. First Jersey Nat. Bank*, 638 F. Supp. 1454, 1465 (D.N.J. 1986)). A negligent misrepresentation claim may also be based on an omission where plaintiff adequately pleads a duty to disclose. *S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 397 (D.N.J.), *aff'd in part*, 258 Fed. App'x 466 (3d Cir. 2007).

The Court finds that Count VII must be dismissed under this pleading standard. First, as noted, "statements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are not

assurances of fact and thus do not constitute misrepresentations." *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 159 (D.N.J. 2013) (citation omitted). The marketing statements Port Imperial identified within A.O. Smith's product brochures and specification materials accordingly fail to support this claim.

Furthermore, Port Imperial has failed to present any facts which suggest that A.O. Smith owed it an independent duty beyond the parties' purported contractual relationship. Port Imperial's pleading thus fails to adequately state a claim for negligent misrepresentation. The Court will accordingly dismiss this count, also without prejudice. *Smith*, 2015 WL 12734793, at *7 (dismissing negligent misrepresentation claim where "Plaintiffs have alleged no independent duty of care separate and apart from the alleged contractual relationship.").

### G. Port Imperial is Granted Leave to Amend

Dismissal of Counts I, II, VI, VII, and VIII is without prejudice, and Port Imperial will be afforded the opportunity to amend its complaint to address the pleading deficiencies identified herein. Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). There has been no prior dismissal decision rendered in this matter and A.O. Smith has not demonstrated that it would be prejudicial, futile, or otherwise unfair for Port Imperial to be given leave to amend. It is consistent with principles of fairness and justice to afford Port Imperial an opportunity to do so. Port Imperial may file an amended complaint within 30 days of the date of this Opinion.

## IV.    CONCLUSION

For the reasons above, A.O. Smith's motion is **GRANTED in part** (as to Counts I, II, VI,

VII, and VIII) and **DENIED in part** (as to Count IX).


Dated: December 8, 2022

_____
Evelyn Padin, U.S.D.J.